IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

GREAT AMERICAN ALLIANCE       *
INSURANCE COMPANY,            *
                             *
        Plaintiff,           *
                             *
             v.              *        CV 114-112
                             *
BRIAN PRESTON HENSLEY and     *
ULYSSES RODNEY ANDERSON,      *
                             *
        Defendants.          *
                             *

O R D E R

This matter is before the Court on Plaintiff Great American
Alliance Insurance Company's ("Great American") and Defendant
Ulysses Rodney Anderson's cross-motions for summary judgment.
(Docs. 37, 40.)   On June 10, 2012, Mr. Anderson sustained
"catastrophically permanent injuries" after a vehicle owned by
Looper Cabinet Company, Inc. ("Looper Cabinet") and driven by
Defendant Brian Preston Hensley struck Mr. Anderson's
motorcycle.   (Underlying Compl., Doc. 40-3, ¶ 23.)   Mr. Hensley
was under the influence of alcohol and allegedly fled the scene.
(Id. ¶¶ 8, 13, 17.)   Great American seeks to avoid coverage
under Looper Cabinet's policies of insurance because Mr. Hensley
did not have permission to operate Looper Cabinet's truck while
intoxicated and therefore was not an "insured."   Alternatively,
Great American claims Mr. Hensley subjectively intended to cause
the wreck, thereby invoking the "Expected or Intended Injury"

exclusion. Mr. Anderson moves for judgment in his favor on the same grounds. As the Court finds Mr. Hensley was not an "insured" under either policy of insurance, the Court **GRANTS** Great American's Motion for Summary Judgment (Doc. 37) and declines to address the parties' alternative grounds for relief. Mr. Anderson's Motion for Summary Judgment, accordingly, is **DENIED.** (Doc. 40.)

## I. BACKGROUND

Mr. Hensley began working for Looper Cabinet in 1996. (Hensley Dep. II, Doc. 37-7, at 8.) When he assumed his current role at the company, which requires him to take measurements in the field, Looper Cabinet permitted him to drive one of their trucks between home, work, and job sites. (C. Looper Dep. II, Doc. 37-9, at 29-30, 43-44; Hensley Dep. I, Doc. 37-6, at 6-7; Hensley Dep. II at 6, 9.) Looper Cabinet also allowed him to use the truck on occasion for personal reasons. (C. Looper Dep. II at 29-30, 43-44; Hensley Dep. I at 8 ("I have been told by Chuck Looper that if I needed to use the truck I could use it."); Hensley Dep. II at 7, 26-28; M. Looper Dep., Doc. 40-6, at 44.) At the time of the accident, Mr. Hensley's only vehicle was the company-provided truck. (Hensley Dep. I at 9.)

On June 10, 2012, while driving home from his father's lake house in a Looper Cabinet truck, Mr. Hensley collided with Mr. Anderson's motorcycle. (Anderson St. of Material Facts

("DSMF"), Doc. 40-2, ¶ 1; Pl.'s Resp. DSMF, Doc. 43-1, ¶ 1; Pl.'s St. of Material Facts ("PSMF"), Doc. 37-2, ¶ 15; Anderson Resp. PSMF, Doc. 44-1, ¶ 15.) Mr. Hensley was not performing any services for Looper Cabinet that day (C. Looper Dep. I at 30; C. Looper Dep. II at 10-11, 43; Hensley Dep. II at 7) and had permission to make the personal trip (C. Looper Dep. I at 43-44, 70; C. Looper Dep. II at 31; Hensley Dep. I at 12, 15; Hensley Dep. II at 28; M. Looper Dep. at 40). Mr. Hensley, however, consumed at least four beers prior to driving. (C. Looper Dep. I at 71; Hensley Dep. II at 7, 29.)

To take advantage of certain insurance discounts, Looper Cabinet promulgated and posted a substance abuse policy in 1995 that stated "NO ONE UNDER THE INFLUENCE OF ALCOHOL OR ILLEGAL DRUGS CAN WORK IN THE SHOP ON OR OFF THE CLOCK." (Doc. 40-7 ("1995 Policy"); C. Looper Dep. II at 22-23, 40-43; M. Looper Dep. at 27-28.) Mr. Hensley acknowledged receipt of and signed the 1995 Policy upon hire. (See Doc. 40-7; Hensley Dep. I at 16-17; Hensley Dep. II at 10-11.) In 2000, Looper Cabinet updated its rules and policies to state "NO ONE UNDER THE INFLUENCE OF ALCOHOL OR NON-PRESCRIPTION DRUGS CAN WORK IN THE SHOP OR ON THE TRUCK, ON OR OFF THE CLOCK." (Doc. 37-10 at 1 ("2000 Policy").) The 2000 Policy included eight additional pages outlining the substance abuse policy generally, setting forth definitions, and enacting procedures for investigating substance abuse and drug testing. (See id. at 2-9.) Of note,

3

> [a]n employee reporting to work visibly impaired will
> be deemed unable to properly perform required duties
> and will not be allowed to work. . . . If, in the
> opinion of the supervisor, the employee is considered
> impaired, the employee will be sent home or to a
> medical facility by taxi or other safe transportation
> alternative – depending on the determination of the
> observed impairment – and accompanied by the
> supervisor or another employee if necessary. A drug
> and/or alcohol test may be in order. *An impaired
> employee will not be allowed to drive.*

(Id. at 4 (§ III.A) (emphasis added).) Looper Cabinet did not

have a record that showed Mr. Hensley signed the 2000 Policy nor

did Looper Cabinet post it on its premises, but Mr. Hensley was

"sure" that he had seen it before. (See C. Looper Dep. II at

33-34, 40; Hensley Dep. II at 12; M. Looper Dep. at 49-50.)

According to Mr. Hensley, Looper Cabinet employees had "been

given documentation like [it] several times." (Hensley Dep. II

at 12; see also M. Looper Dep. at 48 ("I am not aware that he

did not sign . . . , but we give him every policy."), 60.)

As a result of the accident, Mr. Hensley was arrested for

and subsequently pled guilty to driving under the influence, but

later moved to withdraw his plea. (C. Looper Dep. at 35;

Hensley Dep. I at 21-25.) Indeed, Mr. Hensley has maintained

that Mr. Anderson caused the wreck when he lost control of the

motorcycle in damp conditions and went into a skid. (Hensley

Dep. I at 33-39, 66, 85-86; Hensley Dep. II at 14-15.)

At the time of the accident, Great American insured Looper

Cabinet under Businesspro Policy # 250-34-88-00, a commercial

auto policy that provided coverage for "[a]nyone else while

4

*using with your permission* a covered 'auto' you own, hire or borrow," subject to certain exceptions. (Auto Policy, Doc. 37-3, at 44 (§ II.A), at 45 (§ II.A.1.b) (emphasis added).) In addition, Great American insured Looper Cabinet under Umbrella Policy # UMB-2-50-34-89-00, which covered "[a]ny person or organization (other than your partners, 'executive officers,' directors, stockholders or 'employees') with respect to any 'auto' owned by you . . . and *used* by that person or organization *with your permission*." (Umbrella Policy, Doc. 37-4, at 19 (§ V.J.10) (emphasis added).) According to Charles Looper and Michelle Looper, Looper Cabinet expressly requested and received coverage for Mr. Hensley as a named insured. (C. Looper Dep. I at 69; C. Looper Dep. II at 28-29; Hensley Dep. II at 27; M. Looper Dep. at 20-21, 24.) Mr. Hensley's name, however, does not appear anywhere within the Auto Policy or Umbrella Policy.

## II. PROCEDURAL HISTORY

Mr. Anderson filed suit against Mr. Hensley and Looper Cabinet in the Superior Court of Columbia County on January 15, 2013 (the "Underlying Action"). (Underlying Compl. at 1, 10.) In the Underlying Action, Mr. Anderson alleges that as a result of the collision with Mr. Hensley, he sustained "catastrophically permanent injuries to his lower right leg and ankle, and numerous other injuries to his body, including scrapes, bruises, contusions, scars, and the like." (Id. ¶ 23.)

5

Mr. Anderson voluntarily dismissed Looper Cabinet from the Underlying Action after Looper Cabinet moved for summary judgment, and following Looper Cabinet's dismissal, the parties consented to transfer venue to the Superior Court of McDuffie County, Georgia. (PSMF §§ 21, 22; Anderson Resp. PSMF §§ 21, 22.) Trial in the Underlying Action commenced on January 12, 2015, but concluded in a mistrial two days later. (PSMF § 23; Anderson Resp. PSMF § 23.)

Prior to trial, Great American filed the instant case against Mr. Anderson and Mr. Hensley seeking a declaration of the parties' rights and obligations under both insurance policies issued to Looper Cabinet. (Doc. 1, ¶ 2.) Approximately two weeks after answering the complaint and prior to the beginning of discovery in this case, Mr. Anderson filed a motion for summary judgment in which he contended that all issues as to coverage of Mr. Hensley were "undisputed" based on evidence produced during the course of litigating the Underlying Action. (Doc. 14 at 3, 9.) Great American opposed the motion, requesting in its response (Doc. 16) and subsequently in an independent motion (Doc. 18) that the Court deny Mr. Anderson's motion or defer its consideration until after Great American conducted its own discovery. The Court agreed, finding Mr. Anderson's motion to be premature. (Doc. 25.) Meanwhile, Great American moved for and received a default judgment against Mr.

Hensley, who failed to file an answer or responsive pleading after waiving service of process. (See Docs. 23, 24.)

The parties' motions for summary judgment are now ripe for consideration. Upon timely filing of their respective motions, the Clerk gave notice and informed Great American and Mr. Anderson of the summary judgment rules, the right to file affidavits or other materials in opposition, and the consequences of default. (Docs. 38, 41.) The notice requirements of Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), therefore, are satisfied.

### III. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Facts are "material" if they could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor." U.S. v. Four Parcels of Real Prop., 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See Clark v. Coats & Clark, Inc., 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining Adickes v. S.H. Kress & Co., 398 U.S. 144 (1970) and Celotex, 477 U.S. 317). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If — and only if — the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor

its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond with affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

That this matter comes before the Court on cross-motions for summary judgment does not alter the standard of review, "but simply requires a determination of whether either of the parties deserves judgment as a matter of law on the facts that are not disputed." United States ex rel. Saldivar v. Fresenius Med. Care Holdings, Inc., 972 F. Supp. 2d 1339, 1341 (N.D. Ga. 2013) (citing Am. Bankers Ins. Grp. V. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)). Accordingly, each motion must be considered "on its own merits, resolving all reasonable

inferences against the party whose motion is under consideration." Id. As the Eleventh Circuit has held:

> Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed . . . . Nonetheless, cross-motions may be probative of the non-existence of a factual dispute when [] they demonstrate a basic agreement concerning what legal theories and material facts are dispositive.

United States v. Oakley, 744 F.2d 1553, 1555-56 (11th Cir. 1984) (quoting Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975)).

## IV. DISCUSSION

It is undisputed that Mr. Hensley received permission to drive Looper Cabinet's vehicle to and from his father's lake house on the day of the accident and that he did not engage in any work for Looper Cabinet that day. Great American argues, however, that Mr. Hensley's use of the vehicle *after consuming alcohol* violated Looper Cabinet's express policies — a point Mr. Hensley concedes — rendering his use unauthorized and not covered under either policy of insurance. (Pl.'s Br., Doc. 37-1, at 11-12; Pl.'s Resp., Doc. 43, at 4-5.) Mr. Anderson contends that Looper Cabinet's policies apply only to the use of drugs or alcohol *while performing work*. (Anderson Br., Doc. 40-1, at 8-9; Anderson Resp., Doc. 44, at 6-7.) He emphasizes Looper Cabinet never had any policy governing its employees'

10

consumption of alcohol when not performing services for Looper Cabinet. (DSMF ¶ 7; Pl.'s Resp. DSMF ¶ 7.) In addition, Mr. Anderson maintains that Looper Cabinet's updated substance abuse policy, which extended its rule against alcohol consumption to its fleet of trucks in 2000, "has no force and effect with respect to this action" because Mr. Hensley neither received it nor signed it. (Anderson Br. at 9; Anderson Resp. at 7-8.) Finally, Mr. Anderson argues that Great American merely seeks to create a non-existent exclusion for drunk driving in violation of public policy. (Anderson Br. at 13-15; Anderson Resp. at 12-14.)

The law in Georgia is clear that an insurer's permissive use or omnibus clause "may be relied upon under circumstances where an employee use[s] a company vehicle in an *expressly forbidden manner*." Massachusetts Bay Ins. Co. v. Wooten, 450 S.E.2d 857, 858-59 (Ga. Ct. App. 1994)(emphasis added); Select Ins. Co. v. Register, 384 S.E.2d 238, 239 (Ga. Ct. App. 1989) (citing Ditmyer v. Am. Liberty Ins. Co., 160 S.E.2d 844, 850 (Ga. Ct. App. 1968)). An employer's actions, oral instructions, rules, or regulations thus define when permission arises and establish the scope of permissive use of its vehicles. See Barfield v. Royal Ins. Co. of Am., 492 S.E.2d 688, 690 (Ga. Ct. App. 1997)(citing Wooten, 450 S.E.2d at 859); Register, 384 at 239. With these principles in mind, it is difficult to see how this case demands a different outcome than Charter Oak Fire Ins.

11

Co. v. Scott, No. CV 413-197, 2015 WL 1137775 (S.D. Ga. March 13, 2015) and the Georgia Court of Appeals' decision in Barfield, 492 S.E.2d 688.

In Charter Oak, an employee's direct supervisor gave him permission to transport some personal furniture in a company vehicle despite the company's prohibition on such personal use. 2015 WL 1137775, at *1. Additionally, company regulations expressly prohibited the use of its vehicles while under the influence of alcohol. Id. Subsequent to a collision, the employee pled guilty to driving under the influence of alcohol. Id. In granting summary judgment for the insurer, Judge Moore reasoned as follows:

> [Defendant Scott] admittedly operated the vehicle while under the influence of alcohol in direct contravention of BES company regulations. As the court in Barfield explained, it is immaterial whether an employee received permission to use a company vehicle for a specific and personal purpose if the actual manner in which the employee uses the vehicle was prohibited by the employer. The undisputed facts in this case establish that Defendant Scott was not a permissive user at the time of the accident because he used the vehicle in a manner prohibited by BES. Therefore, this Court concludes that Defendant Scott cannot qualify as an insured under either insurance policy.

Id. at *2-3.

Similarly, in Barfield, an employee was driving a company vehicle with permission and within the scope of his employment when he was involved in a serious accident. 492 S.E.2d at 690. The employee was charged and later pled guilty to driving under

12

the influence.  _Id._  The Georgia Court of Appeals held the employee's use of the vehicle was unauthorized and nonpermissive based on his employer's rule that prohibited possession and consumption of alcoholic beverages in company vehicles and the employee's admission that he was aware of and understood that rule.  _Id._ at 690-91.  Therefore, the employee was not an insured under the terms of the employer's insurance policy because the manner in which the employee used the vehicle was not permitted by company regulations.  _Id._ at 691.

Mr. Anderson attempts to distinguish _Barfield_ by arguing that the plain language of Looper Cabinet's substance abuse policy prohibits intoxication only when _work_ is being done with the vehicle: "NO ONE UNDER THE INFLUENCE OF ALCOHOL OR NON-PRESCRIPTION DRUGS _CAN WORK_ IN THE SHOP OR ON A TRUCK, ON OR OFF THE CLOCK."[1]  (Anderson Br. at 8-10; Anderson Resp. at 6-7, 9; Anderson Reply, Doc. 50, at 2-4; Doc. 37-10 (emphasis added).) The corollary to his argument is that the plain language of the substance abuse policy does _not_ prohibit a Looper Cabinet

---

[1]    Mr. Anderson's argument that the 2000 Policy has "no force and effect" in this case because Mr. Hensley purportedly had no notice of its existence is unavailing.  Even though Mr. Hensley did not recall signing a copy of the 2000 Policy and Looper Cabinet did not post the 2000 Policy on its premises, Mr. Hensley testified that he was "sure" that he had seen it before, agreed with the statement that "Mr. Looper made sure that [he] as an employee knew the policies and procedures," and understood what the 2000 Policy required. (See Hensley Dep. II at 12.)  In any case, Mr. Hensley — by nature of his default — did not raise any argument regarding the sufficiency of notice. The Court is not convinced that Mr. Anderson may make that argument for him as Mr. Anderson is not in privity with Looper Cabinet, nor is he a beneficiary of Looper Cabinet's employee regulations.  _Cf._ _Capitol Indem. Corp. v. Fraley_, 597 S.E.2d 601, 603 (Ga. Ct. App. 2004) (holding an injured third-party lacks standing to complain about an insurer's failure to provide a timely reservation of rights notice).

employee from driving a Looper Cabinet truck under the influence so long as the employee uses the truck on his own time, which Mr. Anderson supports with unrefuted testimony that Looper Cabinet never implemented an off-the-clock personal conduct policy (C. Looper Dep. II at 42-44; M. Looper Dep. at 37, 46-47). In a very literal sense, Mr. Anderson thus argues that the substance abuse policy does not expressly forbid Mr. Hensley's conduct. Yet, Mr. Anderson's position that the Court must engage in a technical, word-by-word analysis is bereft of any legal support. The Court will not apply regimented contract interpretation principles to Looper Cabinet's internal policy in the complete absence of argument that the policy creates an enforceable contract in the first place, much less a contract that Mr. Anderson has standing to challenge.

Instead, the test of permission under a permissive use clause like the one in Great American's Auto Policy and Umbrella Policy is objective. Barfield, 492 S.E.2d at 691 (citing Hurst v. Grange Mut. Cas. Co., 470 S.E.2d 659, 661 (Ga. 1996)). The relevant question before the Court, therefore, is "whether a reasonable person could conclude under the circumstances that the use of the [Looper truck] fell within the scope of the permission granted by the policyholder." See Allstate Ins. Co. v. Spillers, 555 S.E.2d 489, 491 (Ga. Ct. App. 2001) (involving identical policy language on permissive users); see also Hurst, 470 S.E.2d at 661 (describing the inquiry as "whether the owner

14

or one in legal possession of the car gave the user permission"). Reasonable persons could not differ on the answer to that question in this case.

It is clear that Mr. Hensley did not have unfettered dominion over the truck, unrestricted as to time or circumstance. (See C. Looper Dep. at 30; Hensley Dep. I at 9, 11.) Mr. Hensley admittedly operated the vehicle after consuming alcohol, though he claims he was not "drunk" or impaired. (See Hensley Dep. I at 21-32, 77, 81; Hensley Dep. II at 7.) In response to the question "Do you deny that you've been aware the whole time you've worked [at Looper Cabinet] that you're not supposed to drink alcohol in their trucks and drive drunk in their truck?" Mr. Hensley admitted that he knew he was "not supposed to do that." (Hensley Dep. I at 17; see also Hensley Dep. II at 12 (Q: "And you knew that you weren't supposed to drive the Looper truck when you'd been drinking beer. Is that correct?" A: "Correct.").) When asked if he deliberately violated the Looper Cabinet substance abuse policy on the day of the accident by drinking and driving the truck, Mr. Hensley replied, "That would be true." (Hensley Dep. I at 18-19.) Charles Looper explained that "[he] had a company policy that nobody was to be driving the company vehicle . . . when they had been drinking" (C. Looper Dep. II at 12) and affirmed that "Mr. Hensley had been given a copy of [the] company's policy that informed the employees that they were not

15

to be driving when they were drinking" (id. at 13). Michelle Looper further testified that "[a]ll our policies state - even up to our current policy states that you are not supposed to be using alcohol or illegal substances in our shop or in our vehicles." (M. Looper Dep. at 39-30.) She contested defense counsel's characterization of the substance abuse policy as "not necessarily condemn[ing] them drinking and driving a motor vehicle," insisting that "it says no alcohol use in our policy." (Id. at 32-33.)

There is no contradictory testimony from any source that Looper Cabinet's substance abuse policy did *not* outright prohibit its employees from driving its vehicles after drinking or that Looper Cabinet did not actually enforce it that way. Pointing out the *absence* of an internal policy governing employee conduct after hours likewise does not directly rebut Mr. Hensley's and Mr. Looper's testimony, nor does the absence of such a policy imply that Mr. Hensley had affirmative permission to drive the company truck while intoxicated when he was not "at work."[2] Thus, the only evidence the Court has to

_____

[2]   Mr. Anderson elicited testimony from Michelle Looper that "to [her] knowledge" "there [also] wasn't some oral policy . . . that governed [Mr. Hensley's] operation of a Looper Cabinet truck" and responded affirmatively to the question "is it accurate to say the only policies that governed Brian Hensley's operation of a Looper Cabinet vehicle would have been in writing?" (M. Looper Dep. at 38.)   Again, however, pointing out Ms. Looper's lack of knowledge about oral instructions does not directly rebut Mr. Hensley's or Mr. Looper's testimony.   Moreover, even if the Loopers' testimony about the absence of an after-hours personal conduct policy actually contradicts their testimony about what the Looper Cabinet substance abuse policy prohibits, the conflicting testimony cannot be construed against Great American because Looper Cabinet is not party to this declaratory judgment action.   See

16

balance against the undisputed testimony in this case is Mr. Anderson's bare presentation of the substance abuse policy language itself, which is insufficient to create a factual dispute when not a single party whose conduct it actually governs disagrees about what it prohibits. Thus, the undisputed facts in this case establish that Mr. Hensley was not a permissive user at the time of accident because he violated a specific restriction on his use of the truck and cannot qualify as an insured. Accordingly, Great American's request for summary judgment must be granted.

To rebut this conclusion, Mr. Anderson latches onto the Supreme Court of Georgia's language in <u>Strickland v. Ga. Cas. & Sur. Co.</u>, 162 S.E.2d 421 (Ga. 1968), which the Court of Appeals cited with approval in <u>Gaither v. State Farm Fire & Cas. Ins. Co.</u>, 494 S.E.2d 27 (Ga. Ct. App. 1997), an opinion contemporary to <u>Barfield</u>. (Anderson Br. at 10-12; Anderson Resp. at 9-11.) In <u>Strickland</u>, the Court considered whether the omnibus provision of an insurance policy extended coverage to a vehicle used for a permitted purpose by a driver expressly prohibited from operating it. <u>Id.</u> at 423. The Court held the permission to use contained in an omnibus clause refers to the *purpose* to be served and not the *manner* of the vehicle's operation or the identity of the operator. <u>Id.</u> at 424 (emphasis added); <u>see also</u> <u>Ditmyer</u>, 160 S.E.2d at 850 (contemporaneously holding that

<u>Gaither</u>, 494 S.E.2d at 28 (citing <u>English v. Crenshaw Supply Co.</u>, 387 S.E.2d 628, 633 (Ga. Ct. App. 1989)).

17

"there is an absence of permission within the meaning of [an omnibus clause] if the vehicle is being driven at a time or a place or for a purpose not authorized by the insured").[3] Accordingly, Mr. Anderson argues that Looper Cabinet's restrictions on *how* Mr. Hensley drove the truck — impaired and unlawfully — cannot be considered. He emphasizes that it is undisputed Mr. Hensley had permission for the *purpose* of driving to and from his father's lake house and the Court's inquiry must

---

[3]     The Court notes that since Strickland, the terms "use," "purpose," "manner," "permission," and "scope of permission" have been used interchangeably in much of the Georgia Court of Appeals' precedent addressing permissive use clause language identical to that in this case. See, e.g., Metro. Prop. & Cas. Ins. Co. v. McCall, 581 S.E.2d 651, 652 n.1 (Ga. Ct. App. 2003) (noting "this is not a case dealing with the 'scope of permission'" because the insurance policy language at issue "was amended to 'any other person using it *with your permission*'") (first emphasis added); Spillers, 555 S.E.2d at 491 (noting that the objective inquiry may be framed either as "whether the owner or one in legal possession of the car gave the user *permission*" and "whether a reasonable person could conclude under the circumstances that the use of the [vehicle] fell within the *scope of permission* granted by the policyholder") (emphasis added); Wooten, 450 S.E.2d at 858-59 (noting that permissive use clauses "may be relied upon under circumstances where an employee used a company vehicle in an expressly forbidden *manner*," but emphasizing that the insurer was arguing that the employee "was driving the vehicle for a *purpose* expressly forbidden by his employer") (emphasis added); Register, 384 S.E.2d at 240 (holding that "Register deviated substantially from the *scope of permission*," that the personal "*use* which Register made of the company truck was expressly forbidden," and "[s]ince Register used a company truck in an expressly forbidden *manner*, he would not be insured") (emphasis added); Allstate Ins. Co. v. Martin, 220 S.E.2d 732, 733 (Ga. Ct. App. 1975) (framing the issue as whether "the car was used by others in a *manner* which was not within the permitted use authorized by the father to the son and in turn by the son to others," but finding "the car at the time of the accident was not being used within the permitted *purpose* as defined Strickland") (emphasis added), aff'd sub nom., State Farm Mut. Auto. Ins. Co. v. Allstate Ins. Co., 225 S.E.2d 1 (Ga. 1976); Ditmyer, 160 S.E.2d at 850 (holding there cannot "be any implied permission or consent when the use of the truck was at a time and *in a manner* beyond the scope of employment or of the permission granted, when the departure therefrom was complete," but finding the uncontradicted evidence showed the employee had been forbidden to use the truck on a personal mission).

end there.[4]  (See Anderson Br. at 10 (citing Metro. Prop. & Cas. Ins. Co. v. McCall, 581 S.E.2d 651 (Ga. Ct. App. 2003) for the proposition that "the unrebutted testimony of the insured/owner of a car regarding another person's permission to use the car is dispositive").)

The Court disagrees.  Although the Gaither and Strickland courts foreclosed consideration of the manner of a vehicle's operation when answering the permissive use question, they did acknowledge that "[a]t most [permissive use] could relate only to whether or not permission to operate the vehicle had been given."  Gaither, 494 S.E.2d at 28 (quoting Strickland, 162 S.E.2d at 424).  Having determined that Mr. Hensley did not have permission to operate the truck in clear violation of Looper Cabinet's policy, then the Court's conclusion that Mr. Hensley was not an "insured" is consistent with the Strickland and Gaither holdings.

Longstanding precedent in Georgia favors employers' ability to place certain explicit restrictions on the use of company

---

[4]     In this regard, Mr. Anderson's argument resembles the "first instance permission rule," under which "permission granted to use a vehicle at the time of delivery to another extends to any and all use made of it by the bailee until it is returned to the owner."  Ditmyer, 60 S.E.2d at 849.  That rule, however, has never been the law in this state.  See, e.g., Wooten, 450 S.E.2d at 859 (declining to reach the question whether to adopt the first instance permission rule as the law of Georgia); Transp. Ins. Co. v. Allstate Ins. Co., 432 S.E.2d 259, 262 (Ga. Ct. App. 1993) (noting the first instance permission doctrine was rejected in Hodges v. Ocean Accident & Guarantee Corp., 18 S.E.2d 28, 31-32 (Ga. Ct. App. 1941)).

vehicles by employees,[5] and _Barfield_ merely extends this rule in the limited circumstance where an employer conditions permission on sobriety, however formulated.  See _Barfield_, 492 S.E.2d at 691.  No permission exists within the meaning of a permissive use or omnibus clause if an individual drives a vehicle at a _time_ or a _place_ or for a _purpose_ not authorized by the insured. _Ditmyer_, 160 S.E.2d at 850.  The common element between these allowable restrictions and the one at issue in this case and _Barfield_ is that they are wholly unrelated to and exist independently of what physically occurs when a driver's hands are on the wheel; they are easily-demarcated conditions precedent to obtaining permission.  Based on this, this Court finds the _Barfield_ court's reasoning, although sparse, sound.

Under the circumstances presented here, therefore, it remains the case that no proof exists "from which a jury could find that the mission [Mr. Hensley] set out on was for a purpose to be served _by the permission_."  Ga. Farm Bureau Mut., 379 S.E.2d at 621 (emphasis added).  The undisputed evidence requires a finding that immediately prior to and at the time of the collision Mr. Hensley left the ambit of the permission granted.  Permission under Looper Cabinet's internal rules is _conditioned upon sobriety_:  Mr. Hensley, who was on notice of Looper Cabinet's internal rules and admittedly violated those rules, was _not_ sober and thus could not operate the vehicle for

---

[5]    See, _e.g._, _Wooten_, 450 S.E.2d at 858-59; _Register_, 384 S.E.2d at 239-40; _Ditmyer_, 160 S.E.2d at 850.

*any* purpose within the scope of permission granted to him. His deviation was "neither slight nor inconsequential; it was complete — even in defiance of the forbidden." Ditmyer, 160 S.E.2d at 850.

Finally, Mr. Anderson claims that public policy bars Great American's "strained interpretation" of this case. (Anderson Br. at 13-14; Anderson Resp. at 12-13.) Specifically, he contends that defining an "insured" by reference to an employer's rules and policies manipulates the permissive use clause into a "back door" exclusion for drunk driving. (See id. at 14.) The Court recognizes that public policy favors the compensation of innocent accident victims. Cotton States Mut. Ins. Co. v. Neese, 329 S.E.2d 136, 141 (Ga. 1985). Accordingly, Georgia courts have determined that public policy precludes enforcement of coverage exclusions in a number of circumstances, for instance, when an insured attempts to avoid apprehension or arrest, Neese, 329 S.E.2d at 141-42, or when an insured drives while intoxicated, Ryan v. Boyd, 911 F. Supp. 524, 528 (M.D. Ga. 1996). Indeed, these examples heed the Supreme Court of Georgia's warning in Strickland that to permit use of a vehicle and at the same time prohibit its negligent operation would defeat the very purpose of insurance. 162 S.E.2d at 424.

As distinguished in Wooten, however, Great American is not relying on the fact that Mr. Hensley was driving in an intoxicated condition at the time of the accident to *exclude*

21

coverage. See Wooten, 450 S.E.2d at 859. Moreover, this is not a case where the employer, with resounding overbreadth, regulated the "lawful operation" of its company vehicles or mandated that they be operated "safely" or "in a non-negligent manner." Cf. Neese, 329 S.E.2d at 139 (noting that an insurer's exclusion of for "exceeding the speed limit" "would appear to be unenforceable as a matter of public policy"); Gen. Car & Truck Leasing Sys. v. Woodruff, 447 S.E.2d 97, 100 (Ga. Ct. App. 1994) (finding a blanket exclusion for any violation of the motor vehicle code is void as against public policy regardless of whether other insurance coverage is available). Instead, Great American argues Mr. Hensley could not qualify as an insured because he *could not* and did not gain permission to drive the vehicle given Looper Cabinet's express prohibition against operating company trucks while under the influence and explicit rule that impaired employees were not allowed to drive.

Although the distinction between coverage provisions and exclusionary provisions may be technical and amenable to manipulation in some circumstances, "the power of the courts to declare a contract [provision] void for being in contravention of a sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt." Neese, 329 S.E.2d at 139 n.4 (quoting Equitable Loan & Security Co. v. Waring, 44 S.E. 320, 343 (Ga. 1903)). The Court is not free

from doubt here: Georgia courts steadfastly enforce the permissive use provisions of insurance policies issued in this state even though such enforcement potentially leaves the innocent injured party without compensation for damages. In employer/employee situations, determining whether an employee has permission naturally will involve review of the employer's instructions, rules, and regulations that exist independently of the insurance policy. The Court finds no authority, and Mr. Anderson provides none, that dictates it must categorically exclude an employer's prohibitions against consumption of alcoholic beverages or driving under the influence in company vehicles from consideration.

## V. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Great American Alliance Insurance Company's Motion for Summary Judgment. (Doc. 37.) Mr. Anderson's motion for summary judgment, therefore, is **DENIED.** (Doc. 40.) The Clerk **SHALL** enter judgment in favor of Great American and **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 6th day of May, 2015.

_____
HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA